IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BARBARA FLETCHER, et al., :

    Plaintiffs,

  v. : Case No. 3:16-cv-302

HONEYWELL INTERNATIONAL, INC., : JUDGE WALTER H. RICE

    Defendant. :

---

DECISION AND ENTRY OVERRULING PLAINTIFFS' MOTION TO COMPEL ARBITRATION OF COLLECTIVELY-BARGAINED RETIREE HEALTHCARE DISPUTE (DOC. #14); DISMISSING COUNT III OF COMPLAINT WITH PREJUDICE

---

On behalf of themselves and others similarly situated, retirees Barbara Fletcher, Timothy Philpot, Marcia Fink, and Lucinda Smith, filed suit against Honeywell International, Inc., after receiving notice that, as of December 31, 2016, Honeywell intends to terminate the retiree medical and prescription drug coverage currently provided to them and their covered dependents. Plaintiffs contend that Honeywell promised them lifetime healthcare coverage and benefits.

In Counts I and II of the Complaint, Doc. #1, Plaintiffs allege that this termination of coverage breaches the terms of the collective bargaining agreements ("CBAs"), and violates the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1132.

In Count III, Plaintiffs allege that Honeywell's refusal to arbitrate this dispute constitutes a breach of the CBAs and violates the LMRA. This matter is currently before the Court on Plaintiffs' Motion to Compel Arbitration of Collectively-Bargained Retiree Healthcare Dispute, Doc. #14.

I. Background and Procedural History

Prior to retirement, Plaintiffs, all union employees, worked for many years at Honeywell's Greenville, Ohio, plant. A series of collective bargaining agreements ("CBAs") provided Honeywell retirees and their dependents with healthcare coverage. Although Honeywell sold the Greenville plant in 2011, and although the latest CBA expired in 2014, Honeywell continued to provide healthcare benefits to retirees and their dependents.

However, on December 28, 2015, Honeywell sent a letter to its retirees and their spouses, stating that "Honeywell intends to terminate the retiree medical and prescription drug coverage currently provided to you and your covered dependents as of December 31, 2016." Doc. #14-3, PageID#128. On June 17, 2016, a law firm representing some of the Greenville retirees sent Honeywell a "grievance" letter and a request to arbitrate the dispute. Doc. #14-4, PageID#130. Honeywell refused, maintaining that this particular dispute was not "grievable or arbitrable." Doc. #14-5, PageID##132-33.

On July 18, 2016, Plaintiffs filed suit, on behalf of themselves and other similarly-situated retirees. They allege that Honeywell's plan to terminate coverage

2

as of December 31, 2016, constitutes a breach of the CBAs, a violation of the LMRA, and a violation of ERISA. Plaintiffs further allege that Honeywell's refusal to arbitrate this dispute constitutes a breach of the CBAs and violates the LMRA.

On August 16, 2016, Plaintiffs filed a Motion to Compel Arbitration of Collectively-Bargained Retiree Healthcare Dispute. Doc. #14. Two weeks later, Honeywell filed a Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted. Doc. #15. Honeywell denies that it promised Plaintiffs lifetime healthcare benefits. It also denies that this dispute is subject to arbitration.

On September 6, 2016, the Court held a conference call to discuss the order in which those two motions should be decided. After hearing oral argument from counsel and reviewing the parties' briefs, the Court determined that it would first rule on Plaintiffs' Motion to Compel Arbitration. That motion is now fully briefed and ripe for decision.

II. Discussion

"[N]ational labor policy favors arbitration." *United Steelworkers of Am. v. Cooper Tire & Rubber Co.*, 474 F.3d 271, 277 (6th Cir. 2007). In deciding whether a particular dispute is subject to arbitration, the court is guided by these four principles:

> 1) a party cannot be forced to arbitrate any dispute that it has not obligated itself by contract to submit to arbitration; 2) unless the parties clearly and unmistakably provide otherwise, whether a collective bargaining agreement creates a duty for the parties to arbitrate a particular grievance is a question for judicial determination;

3

> 3) in making this determination, a court is not to consider the merits of the underlying claim; and 4) where the agreement contains an arbitration clause, the court should apply a presumption of arbitrability, resolve any doubts in favor of arbitration, and should not deny an order to arbitrate unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

*Id.* at 277-78 (quoting *Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 485 (6th Cir. 2006)). Although a court cannot consider the merits of the underlying claim, it "must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010).

As the Supreme Court noted in *Litton Financial Printing Division v. NLRB*, 501 U.S. 190, 201 (1991), "arbitration is a matter of consent" and "will not be imposed upon parties beyond the scope of their agreement." *See also United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960) ("arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.").

The relevant question, therefore, is whether this particular dispute falls within the scope of the arbitration agreement in the CBAs. *Granite Rock*, 561 U.S. at 297. Using "ordinary principles of contract law," the court must review the arbitration provision to determine what the parties intended. *M&G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 933 (2015). Unless the contract language is ambiguous, the court cannot consider extrinsic evidence to determine the parties' intent. *See Gallo v. Moen, Inc.*, 813 F.3d 265, 273-74 (6th Cir. 2016).

4

The grievance/arbitration procedures at issue are contained in Article 25.1 of the 2011-2014 CBA. It provides that, "[f]or the purpose of this agreement, the term 'grievance' means any dispute between the Company and the union, or between the Company and any employee or group of employees, concerning the effect, interpretation, application, claim of breach, or violation of this agreement." Doc. #14-2, PageID#100.

In support of their argument that this provision is broad enough to encompass disputes over retiree healthcare benefits, Plaintiffs rely heavily on *VanPamel v. TRW Vehicle Safety Systems, Inc.*, 723 F.3d 664 (6th Cir. 2013). In that case, a group of retirees filed a class action challenging changes made to their healthcare benefits, which were "clearly bargained for" under the CBA. *Id.* at 669. The arbitration provision at issue broadly stated that, "[a]ny alleged violation of the CBA, its changes and this Termination Agreement will be subject to final and binding arbitration." *Id.* at 667.

The court granted the employer's motion to compel arbitration, holding that this arbitration provision was the exclusive remedy for resolving disputes requiring interpretation of the CBA, and that the retirees could not circumvent it "simply by virtue of their retiree status." *Id.* at 669. In so holding, the court noted as follows:

> When there is a general or broad arbitration clause, "the presumption of arbitrability [is] 'particularly applicable,' and only an express provision excluding a particular grievance from arbitration or 'the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.' " *Kroger Co.*, 617 F.3d at 905 (quoting *Mead Corp.*, 21

5

> F.3d at 131). This presumption applies to disputes over retiree benefits if: (1) the parties have contracted for such benefits, and (2) there is nothing in the agreement that specifically excludes the dispute from arbitration. *Cleveland Elec. Illuminating Co. v. Util. Workers Union Local 270*, 440 F.3d 809, 816 (6th Cir. 2006).

*VanPamel*, 723 F.3d at 668.

Seizing on this language, Plaintiffs argue that because the CBA provides for retiree healthcare benefits, and because nothing in the agreement specifically excludes healthcare disputes from arbitration, the Court should sustain their motion to compel.

Plaintiffs, however, overlook one crucial difference between the arbitration provision at issue in *VanPamel*, and the one at issue in this case. Admittedly, both provisions cover a wide variety of disputes arising under the CBA. Honeywell, however, agreed to arbitrate *only* those disputes "between the Company and the union, or between the Company and any employee or group of employees." Doc. #14-2, PageID#100.

The CBAs at issue in *VanPamel* and *Cleveland Electric Illuminating* contain no similar limitation. Nor do the CBAs at issue in the five district court cases that Plaintiffs rely on in support of their argument that the presumption of arbitrability applies to claims involving retirees' contractual right to healthcare benefits. *See UAW v. Kelsey-Hayes Co.*, No. 11-14434, 2012 WL 2135505 (E.D. Mich. June 13, 2012); *UAW v. TRW Auto. US, LLC*, No. 11-cv-14630, 2012 WL 4620879 (E.D. Mich. Sept. 30, 2012); *Burcicki v. Newcor, Inc.*, No. 02-cv-70230, 2010 WL

6

1131451 (E.D. Mich. Mar. 23, 2010)[1]; *Audia v. Newcor, Inc.*, No. 10-10209, 2010 WL 2898515 (E.D. Mich. July 23, 2010); *United Steelworkers of Am. v. Kelsey-Hayes Co.*, 862 F. Supp. 2d 690 (E.D. Mich. 2012).

Because Honeywell did not consent to arbitrate grievances brought by *retirees*, it would be improper to order arbitration of this dispute. Agreeing to arbitrate disputes with the union and with employees does not constitute consent to also arbitrate disputes with retirees. As Honeywell notes, "retirees" are no longer "employees." *See Allied Chem. & Alkali Workers of Am., Local Union No. 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 168 (1971) ("[t]he ordinary meaning of 'employee' does not include retired workers.").

In *Quick Air Freight, Inc. v. Teamsters Local Union No. 413*, 613 F. Supp. 1263, 1273 (S.D. Ohio 1984), the court held that it was "abundantly clear that the grievance and arbitration procedure of the contract . . . is designed for and limited to disputes arising between 'employees' and management and does not encompass disputes between retirees and management."[2] As in that case, the

---

[1] In determining whether a retiree healthcare dispute was subject to arbitration, the court in *Burcicki* recognized that, regardless of how broad the arbitration provision is in terms of *subject matter*, a dispute brought by a *retiree* may not be subject to arbitration if the CBA limits arbitrable grievances to those between the company and an "employee." 2010 WL 1131451, at *13. *See also Exelon Generation Co., LLC v. Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO*, 540 F.3d 640, 645-46 (7th Cir. 2008) (making the same distinction).

[2] The court further noted that this was not surprising, given that the company's agreement to arbitrate is the "quid pro quo" for the employees' agreement not to strike. *Quick Air Freight*, 613 F. Supp. at 1273 (quoting *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 455 (1956)).

7

structure of Honeywell's grievance/arbitration procedures makes it plain that the parties did not intend for disputes with retirees to be subject to arbitration.

Article 25 of the CBA sets forth a multi-step grievance process.  First, the employee must submit the grievance to the department supervisor.  Then, the union may appeal the grievance to the Company's Business Center Manager, and then to the Management Committee.  In the final step of the process, the union may request arbitration.  Doc. #14-2, PageID##100-01.  As Honeywell notes, there is no way for a *retiree* to comply with these prerequisites to arbitration, because retirees have no supervisor and are no longer represented by the union.

Based on the foregoing analysis, it cannot be said that the parties to the CBA intended *any* disputes between Honeywell and its retirees to be subject to arbitration.  Under these circumstances, the "presumption of arbitrability" simply does not apply.  As the Supreme Court stated in *Granite Rock*, "we have never held that this policy overrides the principle that a court may submit to arbitration 'only those disputes . . . that the parties have agreed to submit."  561 U.S. at 302 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)).

Plaintiffs note that Honeywell's successor at the Greenville plant, FRAM Filtration, adopted the 2011-14 CBA and did, in fact, arbitrate a retiree healthcare dispute in 2014.  As Honeywell correctly points out, this is largely irrelevant.  Because a company can always voluntarily agree to arbitrate a dispute, the fact that Honeywell's successor did so says very little about whether *Honeywell* contractually agreed to arbitrate disputes with retirees.

8

Plaintiffs also argue that, as third party beneficiaries to the CBAs, they are entitled to enforce their collectively-bargained rights under the arbitration provision. The Court rejects this argument. To the extent that Plaintiffs are seeking to enforce promises made in the CBA, they are bound by all of its terms, including the scope of the arbitration provision. *See United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 375 (1990) ("third party beneficiaries generally have no greater rights in a contract than does the promisee"). The Court cannot, and will not judicially broaden the scope of the arbitration provision to force Honeywell to arbitrate this dispute.

During the conference call held on September 9, 2016, Plaintiffs' counsel suggested that most of the alleged impediments to arbitration could be resolved if the *union* simply files a grievance on *behalf* of the retirees, on January 2, 2017, after the alleged breach occurs. Although this might bring the dispute more squarely within the scope of the CBA's arbitration provision, there are two other hurdles that cannot be overcome.

First, Plaintiffs' request is untimely. Article 25.2 of the 2011-2014 CBA provides that a grievance must be carried to step 2 of the grievance process "within ten (10) working days of the date the Union or the aggrieved employee or employees, knew or should have known of the facts giving rise to the grievance." Doc. #14-2, PageID#100. That 10-day period was triggered in December of 2015, when the retirees were notified of Honeywell's intent to terminate healthcare coverage. Because they waited nearly six months, until June 17, 2016, to

9

challenge Honeywell's decision, the grievance procedure is no longer available. Moreover, the union cannot "fix" this problem by filing a grievance on January 2, 2017, after the benefits are actually terminated.

Second, Honeywell did not consent to arbitration of class-wide disputes. In *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662, 685 (2010), the Supreme Court held that "class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator." Mere silence on the issue does not constitute consent. Unless the parties explicitly agreed to class-wide arbitration, it cannot be compelled. *Id*. at 687. *See also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 347-50 (2011) (discussing the "fundamental" differences between bilateral arbitration and class-action arbitration).

Given that the CBA in this case does not specifically authorize arbitration of class-wide disputes, the Court cannot compel Honeywell to arbitrate Plaintiffs' class action claims, regardless of who brings them. *See Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013) ("the principal reason to conclude that this arbitration clause does not authorize classwide arbitration is that the clause nowhere mentions it.").

For the reasons discussed above, the Court concludes that Honeywell did not consent to arbitration of this particular dispute. Honeywell did not agree to arbitrate any disputes with *retirees*, nor did it agree to arbitrate *class-wide* disputes. Because "it may be said with positive assurance that the arbitration

10

clause is not susceptible of an interpretation that covers the asserted dispute," *Warrior & Gulf*, 363 U.S. at 582-83, the "presumption of arbitrability" does not apply. Moreover, the grievance was not filed in a timely manner.

Having determined that this dispute squarely falls outside the scope of the arbitration provision, it is not necessary for the Court, at this juncture, to address the question of whether Plaintiffs have a right to lifetime healthcare benefits, or whether that alleged right vested prior to the expiration of the latest CBA in 2014. *See Litton*, 501 U.S. at 205-06 (noting that post-expiration grievances may still be subject to arbitration if the action taken "infringes a right that accrued or vested under the agreement, or where . . . the disputed contractual right survives expiration of the remainder of the agreement."). These issues will be decided in the context of the pending motion to dismiss.

### III. Conclusion

For the reasons set forth above, the Court OVERRULES Plaintiffs' Motion to Compel Arbitration of Collectively-Bargained Retiree Healthcare Dispute, Doc. #14, and DISMISSES WITH PREJUDICE Count III of Plaintiffs' Complaint.

Date: September 13, 2016

WALTER H. RICE
UNITED STATES DISTRICT JUDGE

11