IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BARBARA FLETCHER, *et al.*,

        Plaintiffs,

    v.

HONEYWELL INTERNATIONAL,
INC.,

        Defendant.

:

:

:

:

Case No. 3:16-cv-302

JUDGE WALTER H. RICE

---

DECISION AND ENTRY OVERRULING MOTION OF DEFENDANT
HONEYWELL INTERNATIONAL, INC., TO DISMISS COMPLAINT FOR
FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE
GRANTED (DOC. #15); OVERRULING WITHOUT PREJUDICE
RETIREES' MOTION FOR (1) SUMMARY JUDGMENT AND
PERMANENT INJUNCTION OR, IN THE ALTERNATIVE, (2)
PRELIMINARY INJUNCTION PREVENTING HONEYWELL FROM
ENDING HEALTHCARE AFTER 2016; OUTLINING FURTHER
PROCEEDINGS

---

Plaintiffs Barbara Fletcher, Timothy Philpot, Marcia Fink and Lucinda Smith

each retired from Defendant Honeywell International, Inc.'s, Greenville, Ohio, plant,

where they were members of a collective bargaining unit. After receiving notice

that, as of December 31, 2016, Honeywell intends to terminate the retiree medical

and prescription drug coverage currently being provided to them and their covered

dependents, Plaintiffs filed suit on behalf of themselves and approximately 500

other similarly-situated retirees.

Their Complaint asserts three causes of action.  Count I alleges that Honeywell's termination of healthcare coverage breaches the terms of a series of collective bargaining agreements ("CBAs"), thereby violating Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  Count II seeks relief under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132.  Count III alleges that Honeywell's refusal to arbitrate the dispute breaches the CBAs and violates the LMRA.  Plaintiffs seek declaratory and injunctive relief, as well as damages.

This matter is currently before the Court on Defendant's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted, Doc. #15.  On September 14, 2016, the Court issued a Decision and Entry overruling Plaintiffs' Motion to Compel Arbitration, and dismissed Count III of the Complaint with prejudice.  Doc. #19.  Accordingly, only Counts I and II remain at issue.  The Court held oral argument on October 26, 2016, after the Motion to Dismiss was fully briefed.

Also pending is Retirees' Motion for (1) Summary Judgment and Permanent Injunction or, in the Alternative, (2) Preliminary Injunction Preventing Honeywell from Ending Healthcare After 2016.  Doc. #27.  This motion was recently filed and is not yet fully briefed.

I.   Background and Procedural History

This matter concerns retiree healthcare benefits at Honeywell's Greenville,

Ohio, plant.   A series of collective bargaining agreements ("CBAs") provided

Honeywell retirees and their dependents with healthcare and prescription drug

coverage (hereinafter "retiree healthcare benefits").[1]   Even though Honeywell sold

the Greenville plant in 2011, and the latest CBA expired on May 22, 2014,

Honeywell continued to provide retiree healthcare benefits.   However, on

December 28, 2015, Honeywell notified the retirees and their spouses in writing

that "Honeywell intends to terminate the retiree medical and prescription drug

coverage currently provided to you and your covered dependents as of December

31, 2016."   Doc. #15-2, PageID#393.

On June 17, 2016, a law firm representing the Plaintiffs in this case sent

Honeywell a "grievance" letter and a request to arbitrate the dispute.   Doc. #14-4,

PageID#130.   Honeywell refused.   Doc. #14-5, PageID##132-33.   Thereafter,

Plaintiffs filed suit, on behalf of themselves and other similarly-situated retirees.

They maintain that they were promised lifetime healthcare benefits, and that

Honeywell's plan to terminate this coverage, and its refusal to arbitrate this dispute

violates the terms of the CBAs and the LMRA.   They seek declaratory and

---

[1]   According to the Complaint, Honeywell and its predecessors have been parties
to CBAs covering the Greenville plant since approximately 1960.   The most recent
CBAs covered the periods from 1994-1997, 1997-2000, 2000-2003, 2003-2008,
2008-2011, and 2011-2014.   Doc. #1, PageID#4.

3

injunctive relief under the LMRA and ERISA, as well as compensatory damages. Doc. #1.

On August 16, 2016, Plaintiffs also filed a Motion to Compel Arbitration, Doc. #14. Two weeks later, Honeywell filed a Motion to Dismiss, Doc. #15. On September 14, 2016, the Court overruled the Motion to Compel Arbitration, and dismissed Count III of the Complaint with prejudice. Doc. #19. The Court now turns its attention to Honeywell's Motion to Dismiss Counts I and II. Honeywell argues that Counts I and II are subject to dismissal under Federal Rule of Civil Procedure 12(b)(6), because they are based on the faulty premise that Honeywell made a promise to provide lifetime retiree healthcare benefits.

## II.    Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted." The moving party bears the burden of showing that the opposing party has failed to adequately state a claim for relief. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In ruling on a 12(b)(6) motion, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as

4

true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis,* 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh*, 487 F.3d at 476).

Nevertheless, to survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Legal conclusions "must be supported by factual allegations" that give rise to an inference that the defendant is, in fact, liable for the misconduct alleged. *Id.* at 679.

## III.    Discussion

Plaintiffs allege that "Honeywell is obligated under the governing CBAs to provide the plaintiffs, their spouses and other eligible dependents and surviving spouses, and others similarly-situated, with lifetime retiree healthcare." Doc. #1, PageID#7. Count I of the Complaint alleges that Honeywell's plan to terminate those benefits will breach the CBAs and violate the LMRA. *See* 29 U.S.C.

5

§ 185(a) (granting jurisdiction to district courts to resolve disputes between employers and labor unions about CBAs).

Count II seeks declaratory and injunctive relief under ERISA. That statute allows a plan participant or beneficiary in an "employee welfare benefit plan" to file suit "to recover benefits due him under the terms of his plan, to enforce his rights under terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). It also allows a participant, beneficiary, or fiduciary to file suit to enjoin acts or practices that violate the terms of the plan. 29 U.S.C. § 1132(a)(3). Plaintiffs seek to enforce their rights under the terms of the plan, and ask for an order requiring Honeywell to continue providing retiree healthcare benefits.

### A.    Relevant Law

The viability of both of Plaintiffs' remaining claims hinges on whether the governing CBAs provide Honeywell retirees and their covered dependents with a vested right to healthcare and prescription drug benefits.[2]  As the Sixth Circuit has explained, "[r]etiree medical benefits are welfare benefits, which do not vest automatically under either ERISA or labor contract principles." *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1008 (6th Cir. 2009).  The parties may, however,

---

[2] Honeywell correctly notes that Plaintiffs' ERISA claim is derivative of the LMRA claim.  Unless Plaintiffs can show that their right to healthcare benefits has vested, and that Honeywell's proposed conduct will therefore breach the terms of the CBAs, both claims will fail. *See VanPamel v. TRW Vehicle Safety Sys., Inc.*, 723 F.3d 664, 669 (6th Cir. 2013) ("if Plaintiffs' contractual claim fails because the CBA does not create a vested right to healthcare benefits, their ERISA claims must fail as well.").

agree that welfare benefits will survive the expiration of the CBA. If a welfare benefit has vested, the employer cannot unilaterally modify it or terminate it. However, if the benefit has not vested, the employer can modify or terminate it after the CBA expires. *Id.*

The law concerning the vesting of retiree healthcare benefits has changed significantly within the past several years, and it is now more difficult for retirees to prove that they have a vested right to healthcare benefits. The Sixth Circuit had previously held that when an employer promises to provide retiree healthcare benefits, it can be inferred that, absent an express provision limiting the duration of those benefits (or extrinsic evidence to that effect), the parties intend such coverage to continue for the lifetime of the retiree, just like pension benefits. The general durational clause of the CBA did not apply. *Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of Am. (UAW) v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir. 1983).

Last year, in *M&G Polymers USA, LLC v. Tackett,* 135 S. Ct. 926 (2015), the Supreme Court unanimously abrogated *Yard-Man* and its progeny. The three-year contract in *Tackett* stated that retirees "will receive a full Company contribution towards the cost of [health care] benefits." *Id.* at 931. With respect to the duration of the company's obligation, the contract stated that, "[e]ffective January 1, 1998, *and for the duration of this Agreement thereafter*, the Employer will provide the following program of [healthcare benefits] for eligible employees and their dependents." *Id.* (emphasis added). The district court concluded that the

7

contract did not create a vested right to retiree healthcare benefits, but the Sixth Circuit reversed, based on the inferences set forth in *Yard-Man* and its progeny.

In vacating the Sixth Circuit's opinion, the Supreme Court noted that CBAs are to be interpreted "according to ordinary principles of contract law," and "the parties' intentions control." *Id.* at 933. The Court found that the inferences applied by the Sixth Circuit in *Yard-Man* violated "ordinary contract principles by placing a thumb on the scale in favor of vested retiree benefits in all collective-bargaining agreements." *Id.* at 935.

The Supreme Court held that the Sixth Circuit's approach, in refusing to apply general durational clauses to retiree healthcare benefit provisions, was problematic, given that it ignored the following ordinary contract principles: (1) "the written agreement is presumed to encompass the whole agreement of the parties"; (2) courts must "avoid constructions of contracts that would render promises illusory"; (3) "courts should not construe ambiguous writings to create lifetime promises"; and (4) "contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement." *Id.* at 936-37 (quotations omitted).

The Supreme Court acknowledged that parties can explicitly agree that certain benefits will continue even after the CBA has expired, but "when a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life." *Id.* at 937. Nevertheless, as Justice Ginsburg noted in her concurring opinion, this does not necessarily mean that the

parties' intent to vest must be explicitly stated in "clear and express" language. *Id.* at 938 (Ginsburg, J., concurring). "[C]onstraints upon the employer after the expiration date of a collective-bargaining agreement . . . 'may arise as well from . . . implied terms of the expired agreement.'" *Id.* (quoting *Litton Fin. Printing Div., Litton Bus. Sys., Inc. v. NLRB*, 501 U.S. 190, 203, 207 (1991)). In other words, "silence" as to the duration of retiree healthcare benefits may be overcome either explicitly or implicitly.

The Supreme Court vacated the Sixth Circuit's opinion and remanded the case with instructions to apply ordinary principles of contract law to the language of the CBA to determine whether the parties had agreed to vest healthcare benefits for life. *Tackett*, 135 S. Ct. at 937. In turn, the Sixth Circuit remanded the case to the district court, where it remains pending. *See Tackett v. M&G Polymers USA, LLC*, 811 F.3d 204 (6th Cir. 2016) ("*Tackett III*"). In its remand order, the Sixth Circuit found that reliance on Justice Ginsburg's concurring opinion in *Tackett* was appropriate "because it identifies other principles of contract law." *Id.* at 209 n.2. The Court reiterated that no "clear and express" vesting language is needed, and that intent to vest may be implied from other provisions in the CBA. *Id.* at 209.

Earlier this year, the Sixth Circuit revisited the issue of retiree healthcare benefits in *Gallo v. Moen, Inc.*, 813 F.3d 265 (6th Cir. 2016), *reh'g en banc denied* (March 16, 2016), *cert. denied*, 2016 WL 4399093 (U.S. Oct. 31, 2016). Relying on *Yard-Man*, the district court had concluded that Moen retirees had a

9

vested right to healthcare benefits. Shortly after the district court issued its
decision, however, the Supreme Court decided *Tackett*. On appeal in *Gallo*, the
Sixth Circuit reversed and remanded the case for the district court to enter
judgment in the employer's favor. 813 F.3d at 274.

The *Gallo* court found that the contracts at issue did not indicate intent to
vest lifetime retiree healthcare benefits. Although no "clear and express"
statement was required, and although the court could "draw implications and
inferences from the language of the contract," the court found that, as applied to
the contracts in question, ordinary principles of contract law required the
conclusion that no vesting had occurred. *Id.* at 274.

In so holding, the court stated that, just as we do not expect to find
"elephants in mouseholes," we "should not expect to find lifetime commitments in
time-limited agreements." *Id.* at 269. Because the retiree healthcare benefit
provision did not expressly provide for lifetime benefits, and did not include a
specific end date, the general 3-year durational clause applied, and Moen's
obligation to provide retiree healthcare benefits ended when the 3-year CBA
expired. *Id.*

The CBA at issue promised that "*continued* hospitalization, surgical and
medical coverage will be provided without cost" to retirees. The Sixth Circuit
pointed out that this provision would not be necessary if prior agreements had, in
fact, vested the right to such benefits. *Id.* at 270 (emphasis added). The court

10

also found that, standing alone, the use of future tense language, *i.e.*, "will be" provided, was insufficient evidence of intent to vest. *Id.* at 271.

The CBA at issue explicitly guaranteed lifetime *pension* benefits, but not lifetime *healthcare* benefits. The court stated that, "we must assume that the explicit guarantee of lifetime benefits in some provisions and not others means something." *Id.* at 270. The court rejected plaintiffs' argument that intent to vest could be found in the fact that eligibility for retiree healthcare benefits was tied to eligibility for pensions. *Id.* at 272. Because the court concluded that the unambiguous language of the CBA offered "no evidence of any intent to fix these benefits permanently into the future," it refused to consider any extrinsic evidence. *Id.* at 273-74.[3]

### B.    Analysis

It is undisputed that Honeywell contractually agreed to provide retiree healthcare benefits. At issue is the temporal scope of that commitment. Plaintiffs contend that the series of CBAs at issue created a vested right to lifetime healthcare benefits. Honeywell disagrees. It argues that *Tackett* and *Gallo* are dispositive and warrant dismissal of Plaintiffs' claims.

---

[3] Judge Stranch filed a dissenting opinion in *Gallo*. In her view, the majority swung the pendulum too far in the other direction "by placing a thumb on the employer's scale." *Id.* at 275 (Stranch, J., dissenting). She found that the language in the CBA was ambiguous, and that extrinsic evidence -- including the fact that the employer had continued to provide retiree healthcare benefits after the CBA had expired, and the fact that many employees had decided to retire, accepting a reduction in their pension benefits in exchange for continued healthcare benefits -- resolved the ambiguity in favor of the retirees. *Id.* at 280-81.

To determine what the parties intended, the Court follows the analytical road map laid out in *Tackett* and *Gallo*. First, the Court examines "the entire agreement in light of relevant industry-specific 'customs, practices, usages, and terminology.'" *Tackett*, 135 S. Ct. at 937-38 (Ginsburg, J., concurring). If the intent of the parties is unambiguously expressed within the four corners of the CBA, the Court need look no further. However, if the CBA is ambiguous, extrinsic evidence may be considered to resolve the ambiguity. *Id.* at 938. *See also Gallo*, 813 F.3d at 273-74.

### 1. Relevant CBA Terms

Article 33, Section D, of the 2011-2014 CBA sets forth the relevant contract provisions with respect to retiree healthcare benefits. These read, in relevant part, as follows:

1. Employees ages 50-55 with 30 years of service, who leave the company prior to becoming pension eligible, will be eligible for retiree health care benefits when they commence their pension benefits (age 55 or later). . .

2. Healthcare Contributions for Dependents and Surviving Spouses of retirees on or after June 1, 2000: Effective 01/01/2004 the company will increase its health care contribution to 60% of the cost of retiree medical.

3. Company Cap on Healthcare for Retirees, Dependents and Surviving Spouses: The company will pay 100% of the cost of retiree medical for all current retirees and those who retire prior to 01/01/2004. The company will cap its health care contribution for those retiring on or after 01/01/2004 at its actual 2011 cost (or the actual cost for any year between 2008 and 2011 if greater). This cap will not take effect until 2012. In addition there will be no cap for retirees prior to 01/01/2004. The cap for those retiring on or after 1/1/04 will be a mandatory subject of bargaining for all future negotiations.

The limit (FAS cap) on the Company's health care contributions for dependents and surviving spouses under the 6/1/00-5/31/03 contract will be removed. The company will cap its health care contribution for new dependents and surviving spouses on or after 01/01/2004 at its actual 2011 cost (or the actual cost for any year between 2008 and 2011 if greater). This cap will not take effect until 2012. The cap for those dependents and surviving spouses of retirees who retire on or after 1/1/04 will be a mandatory subject of bargaining for all future negotiations.

4. Administration of Cap on Healthcare Contributions for Retirees, Dependents, and Surviving Spouses: The company will limit it[]s subsidy for medical coverage for retirees, dependents, and surviving spouses to the actual amount of the company subsidy in 2011 (or the actual subsidy for any year between 2008 and 2011 if greater). All medical cost increases above the limit will be charged to retirees, dependents and surviving spouses in the form of contributions. . . .

5. Upon the death of a retiree, the Company will continue coverage for the spouse and dependent children for their lifetime provided 1) the retiree elected a joint & survivor form of benefit payment under the pension plan, and 2) the surviving spouse pays 40% of the cost of family coverage. The cost is subject to the caps as explained in 2.D. above.

Doc. #23-2, PageID##537-39.

The CBA also provides that "[e]mployees hired after May 22, 2011 will not be eligible for Company provided Retiree Medical benefits." *Id.* at PageID#541. Employees who retire after June 1, 2012, and their dependents, will have to pay the entire cost of retiree medical and dental coverage. *Id.* at PageID#544. Article 39 of the 2011-2014 CBA contains a general durational clause, stating that the agreement will remain in effect until May 22, 2014. Doc. #15-1, PageID#367.

2. **Absence of Express Language Promising Lifetime Retiree Healthcare Benefits Is Not Dispositive**

Honeywell relies heavily on the statement, in *Tackett*, that parties can explicitly agree that certain obligations will continue after the CBA expires, "[b]ut when a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life." 135 S. Ct. at 937.

The CBAs at issue do not expressly state that Honeywell will provide lifetime retiree healthcare benefits. Nevertheless, as counsel for Honeywell conceded at oral argument, a clear and express statement is not required. *See Tackett III*, 811 F.3d at 209 (noting that the Supreme Court "declined to adopt an 'explicit language' requirement in favor of companies").

As noted in *Tackett III*, although the CBA at issue in that case did not contain express language vesting lifetime retiree healthcare benefits, the Supreme Court did not direct that judgment be entered in favor of the employer. Instead, it remanded the case so that the court could apply ordinary contract principles to determine the parties' intent. *Id.* at 209 n.3. The Sixth Circuit explained as follows:

> [W]hile the Supreme Court's decision prevents us from presuming that "absent durational language referring to retiree benefits themselves, a general durational clause *says nothing* about the vesting of retiree benefits," we also cannot presume that the *absence* of such specific language, by itself, evidences an intent *not* to vest benefits or that a general durational clause says *everything* about the intent to vest.

*Id.* at 209 (emphasis in original). *See also Gallo*, 813 F.3d at 274 (holding that *Tackett* does not create a "clear-statement rule," and that, in accordance with

14

ordinary principles of contract law, courts may "draw implications and inferences from the language of the contact."); *Tackett*, 135 S. Ct. at 938 (Ginsburg, J., concurring) (noting that an employer's obligation to provide benefits after the expiration of a CBA may impliedly arise from other provisions in the CBA).

Because neither the *absence* of an express promise of lifetime healthcare benefits, nor the *presence* of a general durational clause is dispositive, the Court must examine the other provisions of the contract, using "traditional canons of contract interpretation," to determine whether the parties intended to vest retiree healthcare benefits for life. *Gallo*, 813 F.3d at 273. If the parties' intent is unambiguously expressed in those other provisions, that expression controls. If, however, the language is ambiguous, the Court may look to extrinsic evidence to determine what the parties intended. *Id.* at 273-74.

### 3. The CBA is Ambiguous Concerning the Parties' Intent to Vest Lifetime Retiree Healthcare Benefits

A contract term is ambiguous where its meaning "cannot be determined from the four corners of the agreement or where contract language is susceptible to two or more reasonable interpretations." *Potti v. Duramed Pharm., Inc.*, 938 F.2d 641, 647 (6th Cir. 1991).

Honeywell maintains that the CBA is unambiguous, and cannot reasonably be construed to vest lifetime retiree healthcare benefits. Relying heavily on the Sixth Circuit's opinion in *Gallo*, Honeywell argues that, because the CBA is silent as to the duration of retiree healthcare benefits, and *Yardman*-type inferences are

no longer permissible, the general durational clause controls. Accordingly, Honeywell maintains that its contractual duty to provide such benefits expired on May 22, 2014, when the last CBA expired.

Plaintiffs, however, argue that the requisite intent to vest lifetime retiree healthcare benefits may be found in numerous provisions in the CBA. They maintain that the CBA unambiguously confers such lifetime benefits. In the alternative, they argue that, at the very least, the CBA is ambiguous, precluding dismissal on 12(b)(6) grounds. For the reasons set forth below, the Court concludes that the parties' intent, concerning the vesting of lifetime retiree healthcare benefits, is not unambiguously expressed in that document.

The Court rejects Honeywell's argument that *Gallo* mandates dismissal of Plaintiffs' claims. Although there are many similarities between the CBA language in *Gallo* and the language at issue here, there are also critical differences. The *Gallo* majority stated that, "[n]o court to our knowledge has found, or would find, a promise of unalterable healthcare benefits based on CBA language *of this sort* in a time-limited agreement." 813 F.3d at 271 (emphasis added). Application of ordinary principles of contract law to the contract language at issue offered "no evidence of any intent to fix these benefits permanently into the future." *Id.* at 273. The court therefore concluded that "[a]s applied to *this set of contracts*, those principles require the conclusion that no vesting occurred." *Id.* at 274 (emphasis in original).

16

Given the differing contract language in Honeywell's CBA, the same conclusion is not necessarily required here. As in *Gallo*, Honeywell's CBA expressly vests pension benefits, but does not expressly vest retiree healthcare benefits. And, like the CBA in *Gallo*, Honeywell's CBA has a general three-year durational clause, with no other durational time limit attached to the retiree healthcare benefit provision.[4] There are, however, many factual differences between the CBAs, some crucial.

First, and most importantly, in contrast to Article 33, Section D.5 of Honeywell's CBA, the CBA at issue in *Gallo* does not expressly promise lifetime healthcare benefits to retirees' surviving spouses and dependents. *See* 813 F.3d at 269 ("nothing in this or any of the other CBAs says that Moen committed to provide unalterable healthcare benefits to retirees and their spouses for life."). Plaintiffs maintain that, implicit in the language *"[u]pon the death of a retiree*, the company will continue coverage for the spouse and dependent children. . ,"* Doc. #23-2, PageID#539 (emphasis added), is the agreement that coverage for the retiree ends at death.

---

[4]  Plaintiffs note that Article 33, Section C, of the CBA, Doc. #23-2, PageID##536-37, sets express durational limits on healthcare coverage for employees on sick leave, workers' compensation, or unpaid personal leave, and for surviving spouses upon the death of their employee-spouses. Other promises concerning strikes and lockouts (Article 28.1), and union dues (Article 42.1) are specifically limited to "the life of this agreement." Plaintiffs argue that, because there are no similar durational limits on retiree healthcare benefits, this difference in language must be given effect. This argument, however, was rejected in *Gallo*. *See* 813 F.3d at 271-72.

In the Court's view, this language is not dispositive. Nevertheless, the express vesting of lifetime healthcare benefits for surviving spouses and dependents raises a very strong inference that the parties also intended to vest lifetime healthcare benefits in the retirees themselves.

Honeywell argues that the presence of this surviving spouse provision requires exactly the opposite conclusion, and dictates dismissal of Plaintiffs' claims. In *Gallo*, where pension benefits were explicitly vested, but retiree healthcare benefits were not, the court held that "[t]he difference in language demands a difference in meaning. . . . we must assume that the explicit guarantee of lifetime benefits in some provisions and not others means something." 813 F.3d at 270. Applying the same reasoning, Honeywell argues that, because lifetime healthcare benefits for surviving spouses and dependents are explicitly vested, but retiree healthcare benefits are not, we must conclude that the parties did not intend that Honeywell's obligation to the retirees would extend beyond the life of the CBA.

The Court disagrees. *Tackett* instructs us that we cannot assume that explicit vesting of pension benefits equates to implied vesting of retiree healthcare benefits. This, however, is different -- the parties explicitly agreed to provide lifetime healthcare benefits to surviving spouses and dependents upon the retirees' death.

In *International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW v. Loral Corporation*, 873 F. Supp. 57, 64

18

(N.D. Ohio 1994), *aff'd*, 107 F.3d 11, 1997 WL 49077 (6th Cir. 1997), the court noted that it "defies common sense" to believe that the parties would agree to provide lifetime healthcare benefits for surviving spouses and dependents, but not extend the same protection to the retirees themselves. *See also Bidlack v. Wheelabrator Corp.*, 993 F.2d 603, 608 (7th Cir. 1993) (holding that a CBA promising to "pick up the full tab" for retirees' health insurance once they reach age 65, and promising that, upon the death of the retiree, the surviving spouse will continue to receive healthcare benefits, "could be thought a promise to retired employees that they and their spouses will be covered for the rest of their lives.").

Honeywell notes that these cases were decided long before *Tackett* and *Gallo*, when *Yard-Man* was still good law. This does not necessarily mean that the basic "common sense" argument articulated therein cannot still be considered. In fact, in her concurring opinion in *Tackett*, Justice Ginsburg specifically stated that a "survivor benefits" clause may be relevant to the question of whether the retirees have a vested right to lifetime healthcare benefits. 135 S. Ct. at 938 (Ginsburg, J., concurring).

The Court rejects Honeywell's argument that the derivative nature of the surviving spouses' healthcare benefits in *Loral* makes that case factually distinguishable. In *Loral*, the surviving spouse was entitled to continue to receive a portion of the *retiree's* benefits. 1997 WL 49077, at *3. Here, however, there is no similar language; the surviving spouses' benefits are not conditioned on the benefits that the retiree was receiving at the time of his or her death. Regardless

19

of the nature of the benefits, the fact remains that it would be highly unusual for the parties to agree to extend lifetime healthcare benefits to surviving spouses and dependents, but allow the company to terminate healthcare benefits for the retirees themselves as soon as the CBA expires. *See Winnett v. Caterpillar, Inc.*, 510 F. App'x 417, 420-21 (6th Cir. 2013) (noting that it would be unreasonable to expect a surviving spouse's benefits to exceed those of the retirees).

Honeywell correctly notes that nothing *prevents* the parties from contractually providing greater benefits to spouses and dependent children than they do to retirees. As a plausible explanation for doing so, Honeywell suggests that "[e]mployees have every incentive to negotiate special benefits for surviving spouses and dependents, who they might perceive as more vulnerable to fluctuation in healthcare costs." Doc. #24, PageID#644. At oral argument, counsel for Honeywell admitted, however, that this proffered explanation was extrinsic evidence that could not properly be considered on a 12(b)(6) motion. Notably, Honeywell's counsel also conceded that he could not point to any other cases in which similar language had been interpreted to provide lifetime healthcare benefits to surviving spouses and dependents, but not to the retirees themselves.

The explicit vesting of lifetime healthcare benefits for surviving spouses and dependents is certainly not dispositive but, in the Court's view, it is sufficient to create an ambiguity concerning the parties' intent to vest lifetime retiree healthcare benefits.

There are additional reasons why *Gallo* does not dictate the outcome of the pending motion. The CBA at issue in that case contained a reservation-of-rights clause, giving Moen "the right to amend, cancel or reinsure the policies . . . so long as [specified] benefits are maintained for the life of this Agreement." 813 F.3d at 270 (emphasis added). The court concluded that this clause was "incompatible with construing the agreement to create vested and unalterable benefits." *Id.* Because Honeywell's CBA contains no similar reservation-of-rights clause, there is no similar problem here.

In addition, the CBAs in *Gallo* stated that "continued hospitalization, surgical and medical coverage will be provided without cost to past pensioners and their dependents. . . " *Id.* at 269. The court noted that "[t]here would be no need to 'continue' such benefits if prior CBAs had created vested rights to such benefits." *Id.* at 270. In contrast, Article 33, Section D.3 of Honeywell's CBA simply states, "[t]he company *will pay* 100% of the cost of retiree medical for all current retirees and those who retire prior to 01/01/2004." Doc. #23-2, PageID##537-38 (emphasis added). Because there is no mention of "continued" coverage, Honeywell's CBA does not suffer from the same impediment that gave the court pause in *Gallo*.

Honeywell maintains that Section D.3 is relevant only to the *amount* of the company's contribution, not its *duration*. According to Honeywell, because this provision is silent concerning the duration of the company's obligation, the general durational clause applies, and retiree healthcare benefits are guaranteed only until

21

the CBA expires. This argument again overlooks the fact that the intent to vest may also be implicit.

Citing *Gallo*, Honeywell contends that the use of future tense language, *i.e.*, "[t]he company *will pay*," is insufficient to create a vested right to benefits that continues beyond that date. In *Gallo*, however, the Sixth Circuit stated, "[i]f *Tackett* tells us anything . . . it is that the use of the future tense *without more—* without words committing to retain the benefit for life—does not guarantee lifetime benefits." 813 F.3d at 271 (emphasis added). Standing alone, the use of future tense language is not dispositive; however, this does not mean that it is *irrelevant* to the question of the parties' intent. The question is whether the use of future tense language, combined with *other provisions* in the CBA, evidences an implied intent to vest lifetime retiree healthcare benefits.

Plaintiffs cite to several other provisions in the CBA in support of their claim that the parties intended Honeywell retirees to receive lifetime healthcare benefits. Although these other provisions may have less probative value than the surviving spouse provision, they are consistent with Plaintiffs' claim and provide additional support for the Court's conclusion that the CBA is ambiguous concerning intent to vest.

For example, Article 33, Section D.1 of Honeywell's CBA states that deferred vested retirees (employees ages 50-55 with 30 years of service, who leave the company prior to becoming pension eligible) "will be eligible for retiree health care benefits when they commence their pension benefits." Doc. #23-2,

PageID#537. The CBA at issue in *Gallo* did not contain any similar provision concerning healthcare benefits for *deferred vested* retirees.

To the extent that Plaintiffs may be arguing that language tying eligibility for healthcare benefits to eligibility for pension benefits is evidence of intent to vest, Honeywell correctly notes that this argument was rejected by the court in *Gallo*. Tying language is relevant only if the benefits are *durationally* linked. *See* 813 F.3d at 272 (citing *Tackett*, 135 S. Ct. at 938 (Ginsburg, J., concurring)).

This, however, is not the argument that Plaintiffs make. They argue that intent to vest can be implied from the fact that eligibility for healthcare benefits could arise as many as fifteen years *after* the CBA expires.[5] This gives rise to an inference, albeit a weak one, that the parties understood that Honeywell would provide lifetime retiree healthcare benefits.

In a similar vein, Plaintiffs note that the company "caps" on contributions for healthcare costs, as set forth in the 2003-2008 CBA (Doc. #23-3, PageID##566-67), and the 2008-2011 CBA (Doc #23-4, PageID##578-79), did not take effect until after each of those CBAs had expired.[6] The CBA at issue in *Gallo* contained no similar caps.

---

[5]   Full pension benefits are not available until age 65. Therefore, if a 50-year-old employee retired in 2011, he or she would not be eligible until 2026.

[6]   Honeywell notes that the 2011-2014 CBA kept the 2012 caps in place, allowing them to become effective during the life of the agreement. Doc. #23-2, PageID##538-39. At that point, however, sale of the Greenville plant was imminent.

Citing *Cole v. ArvinMeritor, Inc.*, 516 F. Supp. 2d 850 (E.D. Mich. 2005), Plaintiffs argue that the deferred caps show an intent to provide lifetime benefits. The court in that case held that "[t]hese cost-controlling caps are future oriented, and govern retiree health costs for decades after expiration of the agreements in which they appear. The only reasonable conclusion is that the agreements intend that both pension and retiree health benefits are to continue for the lifetimes of retirees, eligible dependents, and surviving spouses." *Id.* at 870.

Plaintiffs further argue that the fact that these caps did not apply to individuals who retired prior to 2004 shows that Honeywell understood that healthcare benefits were vested and could not be modified. Honeywell notes, however, that the levels and start dates of the relevant caps *were* modified over the course of the last three CBAs, leading to the opposite inference.

At oral argument, Honeywell's counsel explained that it is a common practice for parties to set contribution caps that become effective only after the CBA expires, and that this is done solely for accounting purposes. Counsel also conceded, however, that this explanation constitutes extrinsic evidence that cannot be considered on a 12(b)(6) motion. At this stage of the litigation, the Court can look only at the written terms of the contract. In the Court's view, the fact that the contribution caps became effective only after the CBAs expired could support an inference of an implied intent to vest lifetime retiree healthcare benefits.

Finally, Plaintiffs note that Honeywell discontinued *all* contributions for healthcare coverage for employees who retired after June 1, 2012. Citing *Bender*

24

*v. Newell Window Furnishings, Inc.*, 681 F.3d 253, 263 (6th Cir. 2012), Plaintiffs argue that a negotiated end to healthcare benefits for future retirees, combined with the simultaneous continuation of benefits for those retiring prior to that date, suggests that the parties understood that those previous retirees would be provided with lifetime healthcare benefits.  Honeywell points out, however, that the termination provision at issue says nothing about the *duration* of benefits owed to previous retirees.

The inferences that Plaintiffs ask the Court to draw are not without their flaws.  As Honeywell points out, because several of the cases cited by Plaintiffs relied on *Yard-Man*, their continuing precedential value is questionable. Nevertheless, for the reasons stated above, this is a much different case than *Tackett* or *Gallo*.  Having examined the entire agreement, and applied ordinary contract principles, the Court finds that the CBA is ambiguous concerning the parties' intent to vest lifetime retiree healthcare benefits.  Both parties have offered reasonable interpretations of the relevant terms.  The Court must, therefore, resort to extrinsic evidence to resolve the ambiguity.

In its Motion to Dismiss, Honeywell argues that "under no circumstances can extrinsic evidence be used to infer the presence of a lifetime promise not included in the text of the contract: 'courts should not construe ambiguous writings to create lifetime promises.'"  Doc. #15, PageID#280 (quoting *Tackett*, 135 S. Ct. at 936).  This is simply incorrect.  In the language quoted by Honeywell, the Supreme Court was simply explaining why the Sixth Circuit's *Yard-*

25

*Man* presumption was problematic.  It did not hold that extrinsic evidence can

never be considered to resolve ambiguities concerning the parties' intent.  In fact,

as Justice Ginsburg noted, this is an ordinary principle of contract law.  135 S. Ct.

at 938 (Ginsburg, J., concurring).  *See also Tackett III*, 811 F.3d at 208-09; *Gallo*,

813 F.3d at 273-74 (discussing proper use of extrinsic evidence).

Both parties have already presented some extrinsic evidence for the Court's

consideration.  Plaintiffs cite to Honeywell's course of conduct in continuing to

provide retiree healthcare benefits even after the last CBA expired on May 22,

2014, and to testimony from an unrelated arbitration hearing that appears to

indicate that eligible Honeywell employees at the Greenville plant were given a

window of opportunity to retire prior to June of 2012 in order to "save" their

lifetime retiree healthcare benefits.[7]  They also argue that, pursuant to "industry

custom," deferred vested retirees are more likely to be excluded from healthcare

benefits than regular retirees.  Likewise, Honeywell has argued that it is a common

industry practice to institute contribution caps that take effect after the expiration

of the CBA.  Honeywell has also speculated as to reasons why the parties may

have agreed to provide lifetime healthcare benefits to surviving spouses and

dependents but not to the retirees themselves.

Nevertheless, as the parties know, in ruling on a motion to dismiss under

Rule 12(b)(6), the Court is not permitted to consider matters outside the pleadings

---

[7]  Honeywell has objected to the admissibility of this testimony on several
grounds.

unless it converts the motion into a motion for summary judgment, and gives the parties a reasonable opportunity to present additional materials. *See* Fed. R. Civ. P. 12(d). Although the Court was initially inclined to convert the motion to dismiss into a motion for summary judgment, subsequent events have caused the Court to rethink this path.

Late last week, Plaintiffs filed a Motion for (1) Summary Judgment and Permanent Injunction or, in the Alternative, (2) Preliminary Injunction Preventing Honeywell from Ending Healthcare After 2016. Doc. #27. Because time is of the essence, and because of the possibility that this case may not be able to be resolved on summary judgment, the Court has decided that it is preferable to get to the merits of the claims and issue a final decision as quickly as possible.

Accordingly, as discussed with counsel during a conference call held on November 15, 2016, the Court OVERRULES Motion of Defendant Honeywell International, Inc., to Dismiss Complaint for Failure to State a Claim Upon Which Relief Can Be Granted. Doc. #15. The Court also OVERRULES WITHOUT PREJUDICE Retirees' Motion for (1) Summary Judgment and Permanent Injunction or, in the Alternative, (2) Preliminary Injunction Preventing Honeywell from Ending Healthcare After 2016. Doc. #27.

A follow up conference call will be held on November 21, 2016, at 5:00 p.m. Prior to that date, counsel shall confer about what discovery is needed and how much time it will take. The Court will then set a date for an evidentiary hearing, which will be followed by post-hearing briefs. Defendant has agreed to

extend healthcare coverage to qualified retirees and their dependents through February 28, 2017, by which date the Court will have issued a final decision in this matter.[8]

## IV.    Conclusion

For the reasons stated above, the Court concludes that the CBA at issue is ambiguous concerning the parties' intent to vest lifetime retiree healthcare benefits.  Extrinsic evidence is necessary to resolve the ambiguities, but cannot be considered on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Accordingly, the Court OVERRULES Defendant Honeywell's Motion to Dismiss Complaint for Failure to State a Claim Upon Which Relief Can Be Granted, Doc. #15.

---

[8]   Plaintiffs make the alternative argument that the motion to dismiss should be denied because Honeywell has failed to provide sufficient written notice of its intent to terminate the CBA.  *See* Doc. #23, PageID#505 n.5.  Article 39 of the CBA provides that the agreement "shall be renewed automatically for a period of (1) year unless either party gives written notice of a desire to modify, amend or terminate same, at least sixty (60) days prior to the yearly effective date of this agreement," *i.e.,* 60 days prior to May 22nd.  Doc. #23-2, PageID#546.  Plaintiffs contend that, because no notice was given, the 2011-2014 CBA remains in effect, and that Honeywell cannot properly terminate it until May of 2017 at the earliest.

Although the Court need not reach this alternative argument at this juncture, it is inclined to reject it.  Notably, the CBA does not specify what constitutes sufficient "written notice," or to whom such notice must be provided.  The December 28, 2015, letter to Honeywell retirees and spouses, informing them that their healthcare benefits would be terminated at the end of 2016, appears to be a "written notice of a desire to modify" the terms of the CBA, and it was provided at least 60 days prior to May 22, 2016.  It is not clear, however, whether the union was given a copy of this letter.  If Plaintiffs wish to further pursue this argument at the evidentiary hearing or in post-hearing briefs, they may do so.

The Court also OVERRULES WITHOUT PREJUDICE Retirees' Motion for (1) Summary Judgment and Permanent Injunction or, in the Alternative, (2) Preliminary Injunction Preventing Honeywell from Ending Healthcare After 2016. Doc. #27.

A follow-up conference call will be held on November 21, 2016, at 5:00 p.m., during which dates will be set for the discovery deadline, and the evidentiary hearing.

Date: November 15, 2016

WALTER H. RICE
UNITED STATES DISTRICT JUDGE